UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WOROOD JARBO,

                Plaintiff,              Civil Action No. 15-14458
                                              Honorable Paul D. Borman
                                              Magistrate Judge David R. Grand

v.

U.S. SUBURBAN BUILDING
SERVICES, INC., CORY JACOBSON,
in individual capacity, Jointly and Severally,

                Defendants.

_____/

**REPORT AND RECOMMENDATION TO GRANT DEFENDANT U.S. SUBURBAN BUILDING SERVICES, INC.'S MOTION FOR SUMMARY JUDGMENT [24]**

Plaintiff Worood Jarbo ("Jarbo") brings this employment discrimination case against defendants U.S. Suburban Building Services, Inc. ("USSBS") and "Cory Jacobson."[1] (Doc. #1). Jarbo alleges that she worked for USSBS for approximately two months, commencing in June 2013. In Count I of her complaint, Jarbo alleges that, pursuant to Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000 *et seq.*), USSBS is liable for "employer liability for sexual harassment/hostile work environment" on account of an alleged sexual assault committed against Jarbo by Jacoby. (*Id.* at 2). In Count II, Jarbo alleges that Jacoby is personally liable for his alleged sexual harassment under Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), M.C.L. § 37.2101 *et seq.* (*Id.* at 4). Finally, in Count III, Jarbo alleges that USSBS is liable under the ELCRA for allegedly terminating her employment "based on her national origin." (*Id.* at ¶ 33).

On December 2, 2016, USSBS filed a motion for summary judgment, which was referred

---

[1] It appears that "Cory Jacobson's" real name is Corey Jacoby ("Jacoby"), and the Court will refer to him by his correct last name. The record does not reflect that Jacoby has ever been served in this action.

to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docs. #24, #26).  Jarbo, now appearing *pro se*, filed a response, and USSBS filed a reply. (Docs. #27, #28).   The facts and legal issues necessary to decide the instant motion are adequately presented in the docket filings, and the Court declines to order a hearing at this time.

## I.      RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that USSBS' motion for summary judgment **(Doc. #24)** be **GRANTED** and Jarbo's claims against it **DISMISSED WITH PREJUDICE**.   **IT IS FURTHER RECOMMENDED** that Jarbo's ELCRA claim against Jacoby be **DISMISSED WITHOUT PREJUDICE**.

## II.     REPORT

### A.      Factual Background

USSBS, an affiliated entity of The Hayman Company, hired Jarbo on July 1, 2013, to work as a "leasing agent" at two apartment complexes in Southfield – Mapletree Apartments and Pine Ridge Apartments – that are "owned by unaffiliated entity Scherr Development."  (Docs. #24 at 7, #24-2 at 3-4).  USSBS "provided property management functions of these complexes for Scherr Development, such as handling day-to-day rental and maintenance operations and handling leasing of the apartments." (*Id.*).  Jarbo was interviewed for the leasing agent position with USSBS by Pamela Hargrove ("Hargrove") and Terry Cramer ("Cramer"), and she understood that Hargrove managed Mapletree and Cramer managed Pine Ridge for USSBS. (Doc. #24-3 at 7).

Jarbo testified that during her job interview she was told, "there is this guy, Jacob, that he will be talking [to her] and asking questions and that." (*Id.* at 8).  "Jacob," it turns out, is Jacoby, and he apparently worked on-site at the two apartments as a "consultant for Sherr [sic]

Development."  (Doc. #24-2 at 3).  While Hargrove was unsure of Jacoby's exact relationship vis-à-vis Scherr (i.e., whether he was an employee or independent contractor of that entity), she unequivocally testified that he was on site only because Scherr "put him on the property to oversee projects."  (*Id.* at 3-4).  Similarly, Greg Peek, the Director of Human Resources and Risk Management for The Hayman Company and USSBS, avers in a declaration that "neither The Hayman Company nor USSBS has ever employed [] Jacoby," and that "Jacoby did not have any authority over USSBS personnel."  (Doc. #24-11 at ¶¶ 2, 4).

Jarbo was hired by USSBS and worked at both Mapletree and Pine Ridge as a leasing agent for about two months from July 1, 2013 until she was terminated on August 26, 2013.  (Doc. #24-2 at 5).  Her duties included showing potential tenants around the properties, completing the leasing paperwork, and engaging in other customer-service related activities for tenants and potential tenants.  (*Id.*).  Hargrove trained Jarbo.  (*Id.* at 5).  USSBS' instant motion is supported by "Memorandum to File" allegedly prepared by Hargrove and Cramer which purport to document Jarbo's poor performance as a "leasing agent" for USSBS, including:[2]

- "[Jarbo] would not help potential residents when they came in.  She would grab paperwork and hand it off to [White]. . . . [Jarbo] would always state that she was not trained.  Again I would ask her what she was referring to and I would go over things with her again.  She did not seem to be able to grasp the business."  (Doc. #24-9).

- "On numerous occasions I [Hargrove] have walked into the office to find [Jarbo] on her cell phone.  I have told her numerous times that she can't use her cell phone during office hours and she continued to do so. . . . [Jarbo] also being on her cell phone would start yelling and swearing at whomever she was talking to

---

[2] These memoranda are unsigned and unauthenticated.  However, they are generally corroborated by the testimony of Hargrove and White (*e.g.*, Docs. #24-2 at 6 (Hargrove testifying that "[Jarbo] was overbearing, very loud, and she couldn't comprehend our statement of rental policy . . ."), 24-7 at 3 (USSBS' only other leasing agent, Bridget White ("White"), testifying that "[Jarbo] was trying to pass [a requested tour] off to me, which was not something that was out of the ordinary because it happened all the time.")), and Jarbo does not challenge the documents' contents or authenticity.

and it would be very loud.  Again I spoke to her regarding cell phone procedure and that she could not speak like that in the office." (*Id.*).

- Jarbo understood she was required to "do [the] Daily Marketing Form each day she was working at Mapletree, she did it twice then would not do it again even at my request." (*Id.*).

- Jarbo "would speak over me [Hargrove] and anyone else who would speak with her.  I would ask her to please not talk over me but she could not comprehend to not talk and to listen as I was teaching her. . . . no matter how much training I gave her she could not perform her duties." (*Id.*).

- On August 21, 2013, Jarbo refused to take a prospective tenant on a tour, instead insisting that White give her the tour, even though White was already giving another tour at the time.  Jarbo thought White should give the tour because the prospective tenant planned to come back with her boyfriend the next Saturday to see the property again, and White would be working that day.  White did take the tour, but the prospect never returned.  (*Id.*; Doc. #24-7 at 3).[3]

- Jarbo was "very argumentative" with co-workers and residents.  (*Id.*).

- "She did not seem to retain information.  Up to the day she left, she was still entering service requests incorrectly and not following procedures I [Cramer] had given her." (Doc. #24-10).

- Jarbo provided apartment keys to an applicant who had just signed a lease and was not due to move in for a few weeks.  Jarbo instructed this applicant to return the keys to another resident with whom she was allegedly romantically involved.  This resulted in the applicant moving in prematurely.  (*Id.*).

USSBS has presented undisputed evidence that shortly following the August 21st Incident, the decision was made to terminate Jarbo.  At 9:46 p.m. on Wednesday, August 22, 2013, Hargrove e-mailed her boss, James Lewis ("Lewis"), describing the Incident as the "last straw," and indicating that she could not work with Jarbo any longer.  (Doc. #24-8).  Lewis e-mailed back a few minutes later stating, "Let's move forward with termination ASAP." (*Id.*).  Lewis asked that an "Employee Reprimand" form be completed describing "incidents where [Jarbo] did not comply with our procedures and/or affected the properties in a negative way.

---

[3] The Court will refer to this as the "August 21st Incident."

Send it to me, I'll sign, and we can terminate employment right away." (*Id.*).  On Monday, August 26, 2013, Hargrove prepared an Employee Reprimand form which described the August 21st Incident as well as the other conduct referenced in Hargrove's and Cramer's Memoranda. (*Id.*).  The Employee Reprimand indicates that Jarbo had been advised in early August about her negative behaviors, and that she was being terminated.  (*Id.*).  The document is signed by both Jarbo and Hargrove.  (*Id.*).

However, on Saturday, August 24, 2013[4], Jarbo reported for work at Pine Ridge.  (Doc. #1 at ¶ 21).  She claims Jacoby was in her office when she arrived, and that he sexually assaulted her there.  (*Id.* at ¶¶ 22-23).  She claims Jacoby then instructed her to accompany him to a vacant apartment, and that after they were inside the apartment Jacoby again sexually assaulted her.  (*Id.* at ¶¶ 24-26).  Jarbo objected to Jacoby's advances, left the apartment and went back to her office.  (Doc. #24-3 at 9).  As noted above, on Monday, August 26, 2013, Jarbo went to work and met with Hargrove, who discussed the Employee Reprimand with Jarbo and advised her of her termination.  Jarbo admits that she did not mention the alleged sexual assault to Hargrove, or to anyone at USSBS prior to her termination.  (*Id.* at 10).  Indeed, Jarbo admits that she did not tell anyone about the alleged assault until about three months had passed.  (*Id.*).

### B.    Procedural Background

On January 29, 2014, Jarbo filed a Title VII "Charge of Discrimination" with the Equal Employment Opportunity Commission ("EEOC") and the Michigan Department of Civil Rights related to the alleged sexual assault by Jacoby.  (Doc. #24-13).  On April 1, 2014, the EEOC issued a Right to Sue letter to Jarbo advising her that, "Based upon its investigation, the EEOC is

---

[4] In her complaint, Jarbo asserts that "…on August 25, 2013, Saturday . . ."  (Doc. #1 at ¶ 21). However, August 25, 2013 was a Sunday, and it appears that the date in question was actually Saturday, August 24, 2013.

unable to conclude that that the information obtained establishes violations of law." (Doc. #24 at 14). The letter advised Jarbo that she had ninety days from her receipt of the letter to file suit. (*Id.*). Acting *pro se*, Jarbo timely filed suit in the United States District Court for the Eastern District of Michigan on July 1, 2014, and the action was docketed as Case No. 14-12584 ("*Jarbo I*") and assigned to the Honorable Paul D. Borman. (Doc. #24-15). In *Jarbo I*, Jarbo alleged that she was fired "because [she] complained" about the sexual assault, in violation of Title VII of the Civil Rights Act of 1964. (*Jarbo I*, Doc. #1). After Jarbo effectuated service of process on USSBS, attorney Scott P. Batey ("Batey") filed an appearance on Jarbo's behalf. (*Id.*, Doc. #12). The parties then engaged in almost six months of discovery, including multiple depositions.

On April 1, 2015, after the close of discovery, but before dispositive motions were due, a stipulated order was entered to extend the dispositive motion cutoff date. (*Id.*, Doc. #26). The principal reason for this extension was that Batey intended to file a motion to withdraw as counsel. (*Id.*). On April 10, 2015, Batey filed a motion to withdraw as counsel due to a "serious breakdown of the attorney-client relationship . . ." (*Id.*, Doc. #28). Judge Borman held a hearing on this motion on April 20, 2015, and granted Batey's motion. (*Id.*, Doc. #31). Jarbo was "provided thirty (30) days to find a new attorney" and the case deadlines were all stayed. (*Id.*). The Order also provided that "if a new attorney has not filed an Appearance on behalf of [Jarbo] within thirty (30) days of this Order, the matter shall be dismissed without prejudice." (*Id.*). In addition to counsel for the parties, Jarbo signed this stipulated Order. (*Id.*).

On May 18, 2015, just before the expiration of the thirty-day deadline, Jarbo filed a request for an extension of time to find an attorney. (*Id.*, Doc. #33). She had spoken with two attorneys, but neither would take her case. (*Id.*). On May 19, 2015, Judge Borman granted this request, and advised Jarbo that, "If [her] new counsel has not filed an appearance with this Court

on or before **June 24, 2015**, this matter will be dismissed without prejudice . . ." (*Id.*, Doc. #34) (emphasis in original).

On June 23, 2015, Jarbo filed a second motion for extension of time to find an attorney. (*Id.*, Doc. #37). This time, she asked for an additional sixty days. (*Id.*). She claimed this additional time was required because, after she obtained her "file" from attorney Batey, she realized it did not contain three of the deposition transcripts in the case. (*Id.*). She contacted Batey about the missing transcripts, and he advised that he had not ordered them. (*Id.*). Jarbo asked for an "extension of 60 days **a sufficient time to obtain the deposition[] [transcripts] from the court reporter** so that a prospective counsel can review them. . ." (*Id.*) (emphasis added). Specifically referencing her professed need to obtain the deposition transcripts, on June 23, 2015, Judge Borman generously granted Jarbo's request, advising her that "[i]f [her] new counsel has not filed an appearance with this Court on or before **August 18, 2015**, this matter will be dismissed without prejudice pursuant to the parties' stipulation entered by the Court on April 20, 2015. **No further extensions of time will be granted.**" (*Id.*, Doc. #38) (emphasis in original). The deadline came and went without any attorney appearing on Jarbo's behalf, and on August 25, 2015, an order was entered dismissing *Jarbo I* without prejudice. (*Id.*, Doc. #40).

About four months later, on December 23, 2015, Jarbo, now represented by attorney LaNita Haith, filed her complaint in the instant action. (Doc. #1). Although the discovery period in *Jarbo I* had closed before the case was dismissed, Jarbo argued that she needed additional time to discover facts necessary to show that Jacoby was a "supervisor" employed by USSBS. (Doc. #17). On August 19, 2015, over USSBS' objection, the Court permitted an additional period of discovery until October 14, 2015. (Doc. #18). On August 29, 2015, however, attorney Haith moved to withdraw from the case, indicating that Jarbo would either seek a new attorney

or represent herself in the matter, but that she would not ask the Court to adjourn any dates. (Doc. #20).  On October 20, 2015, Haith was permitted to withdraw.  The next filing on the docket is USSBS' instant motion for summary judgment, which the Court addresses below. (Doc. #21).

### C.    Applicable Legal Standards

Pursuant to Federal Rule of Civil Procedure 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011).  A fact is material if it might affect the outcome of the case under governing law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party.  *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009).  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'"  *Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).  In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but

must make an affirmative showing with proper evidence in order to defeat the motion."
*Alexander*, 576 F.3d at 558 (internal quotations omitted).

**D.     Analysis**

**i.     Jarbo's Title VII Claim against USSBS is Time Barred**

USSBS' first argument is that Jarbo's Title VII claim against it is time barred.   "A plaintiff must file her Title VII claim within ninety days of receiving the EEOC's right-to-sue letter."   *Tate v. United Servs. Assocs., Inc.*, 75 F. App'x 470, 471 (6th Cir. 2003).   *See also*, *Hudson v. Genesee Intermediate Sch. Dist.*, No. 13-12050, 2013 WL 6163220, at *2 (E.D. Mich. Nov. 25, 2013) ("An action brought pursuant to Title VII [] must be filed within ninety days of the EEOC issuing a right-to-sue notice."); 42 U.S.C. § 2000e–5(f)(1) ("within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge ...").   "Federal courts strictly enforce the ninety-day statutory limit."   *Lacheta v. Madison Cty. Hosp.*, No. 08-cv-1075, 2009 WL 3515378, at *1 (S.D. Ohio Oct. 28, 2009) (citing *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 557 (6th Cir. 2000)).

Here, Jarbo contends that she received her right-to-sue letter from the EEOC on April 14, 2014.   (*Jarbo I*, Doc. #1 at ¶ 8).   Using that date as the starting point[5] for the statute of limitations, her complaint was due by July 14, 2014.   Jarbo therefore timely filed her initial

---

[5] Arguably, the starting point should be April 6, 2014, which reflects the five-day "presumptive" receipt date imposed under the law.   *See Graham–Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 557 (6th Cir. 2000) ("The Sixth Circuit has resolved that notice is *given*, and hence the ninety-day limitations term begins running, on the fifth day following the EEOC's mailing of [a right-to-sue] notification to the claimant's record residential address, by virtue of a presumption of actual *delivery* and receipt within that five-day duration, unless the plaintiff rebuts that presumption with proof that he or she did not receive notification within that period.") (emphasis in original).   In this case, for the reasons discussed below, it is immaterial whether the Court uses April 6 or April 14, 2014, as the starting point.

complaint in *Jarbo I* on July 1, 2014.  But, as discussed above, *Jarbo I* was dismissed without prejudice on August 25, 2015, and Jarbo did not file her complaint in the instant action until four months later, on December 25, 2015.  Looking only at the relevant dates, Jarbo's instant Title VII claims were clearly filed outside the applicable statute of limitations.

Jarbo advances three alternative arguments as to why the Court should treat her instant Title VII claims as being timely filed: (1) that the filing of her complaint in *Jarbo I* tolled the statute of limitations; (2) that her instant complaint "relates back" to her initial complaint; and (3) that the Court should find the statute of limitations to have been equitably tolled due to her difficulty in securing new counsel after *Jarbo I* was dismissed.  These arguments lack merit.

The Sixth Circuit has held that "[t]he filing of a prior complaint does not toll the ninety-day period and the court cannot extend the time for filing."  *Tate*, 75 F. App'x at 471 (citing *Wilson v. Grumman Ohio Corp.*, 815 F.2d 26, 27 (6th Cir. 1987)).  *See also Disena v. Waste Mgmt. of Michigan, Inc.*, No. 15-11388, 2016 WL 4267975, at *3 (E.D. Mich. Aug. 12, 2016) ("Though a dismissal under *Twombly* is without prejudice, the court notes that if Plaintiff attempted to refile this action, the new Complaint would be untimely. . . . the filing of an earlier complaint that was dismissed without prejudice does not toll the ninety-day period.") (citing *Tate*, 75 F. App'x at 471).  *See also O'Donnell v. Vencor, Inc.*, 466 F.3d 1104, 1111 (9th Cir. 2006) ("In instances where a [Title VII] complaint is timely filed and later dismissed, the timely filing of the complaint does not 'toll' or suspend the 90-day limitation period.  In such cases, dismissal of the original suit, even though labeled as without prejudice, nevertheless may sound the death knell for the plaintiff's underlying cause of action if the sheer passage of time precludes the prosecution of a new action.") (internal citations and quotation marks omitted). Because the filing of *Jarbo I* did not toll the statute of limitations, Jarbo's Title VII claims

10

asserted in the instant action are time barred.  *See Tate*, 75 F. App'x at 471.[6]

Jarbo cites *Donnelly v. Yellow Freight Sys., Inc.*, 874 F.2d 402, 409 (7th Cir. 1989), for the proposition that this Court can deem her instant complaint to "relate back" to her original complaint in *Jarbo I*.  USSBS argues that *Donnelly* "is inapposite as it involved an attempt to amend to add a Title VII claim after 90 days in a state court proceeding.  But, *Donnelly* involved one unbroken litigation."  (Doc. #28 at 2-3).  Technically, Defendants' assertion is incorrect; the *Donnelly* litigation was, in a sense, "broken" twice – first when Donnelly's state court complaint, which asserted only state law claims, was dismissed, and later when the action was removed to federal court at a point in time when there was no operative complaint (the state court complaint having been dismissed), let alone one containing a Title VII claim.[7]

Ultimately, however, *Donnelly* does not aid Jarbo because the Seventh Circuit, finding that the case's procedural posture "utterly makes no sense," *id.* at 410, treated Donnelly's attempt to add Title VII claims as a motion to amend an *existing complaint* (even though it had actually been dismissed).  It then proceeded to apply the "relation back" doctrine in Fed. R. Civ. P. 15(c).  But, that doctrine only applies to attempts to amend an existing complaint, and does not apply where a prior action has been dismissed.  *See O'Donnell*, 466 F.3d at 1111 (holding that a plaintiff's second Title VII complaint "does not 'relate back' to her first complaint because her second complaint was not an 'amendment' to her first complaint, but rather a separate filing.") (citing Fed. R. Civ. P. 15(c)); *Johnson v. Mackie*, No. 15-14233, 2016 WL 3137844, at *2 (E.D. Mich. June 6, 2016) (holding that after a prior action had been dismissed, "the 'relation

---

[6] Moreover, even if the filing of *Jarbo I* did toll the statute of limitations, Jarbo would have had no more than a few weeks after that case's dismissal to file a new complaint.  Jarbo exceeded that timeframe by more than three months.

[7] As the Seventh Circuit noted, the case's odd procedural posture "essentially resulted in a lawsuit without a complaint."  *Donnelly*, 874 F.2d at 405.

back' doctrine is inapplicable... because there is no pleading to which to relate back.") (citation omitted). Here, because Jarbo does not seek to amend an existing complaint, but to commence new litigation containing tardy Title VII claims, her "relation back" argument is unavailing.

Finally, Jarbo has not established entitlement to equitable tolling of the limitations period. "Typically, equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Graham-Humphries*, 209 F.3d at 560-61. "Garden variety" neglect cannot be excused by equitable tolling. *Johnson v. United States Postal Service*, 64 F.3d 233, 238 (6th Cir. 1995). Absent compelling equitable considerations, a court should not extend limitations by even a single day. *Graham-Humprhries*, 209 F.3d at 561.

The Sixth Circuit has identified five factors to consider when determining the appropriateness of equitably tolling a statute of limitations: 1) lack of notice of the filing requirement; 2) lack of constructive knowledge of the filing requirement; 3) diligence in pursuing one's rights; 4) absence of prejudice to the defendant; and 5) the plaintiff's reasonableness in remaining ignorant of the particular legal requirement. *Id.* (citing *Truitt v. County of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998)). This list is not exhaustive, and "[t]he propriety of equitable tolling must necessarily be determined on a case-by-case basis." *Truitt*, 148 F.3d at 648. Analyzing these factors and the facts and circumstances of this case makes clear that there is no basis for applying equitable tolling to save Jarbo's Title VII claims.

Jarbo argues that equitable tolling is appropriate because her first attorney, Batey, failed to order three transcripts of depositions that had been taken during discovery, and his failure to do so prevented her from hiring replacement counsel before *Jarbo I* was dismissed. (Doc. #27 at 6; *Jarbo I*, Doc. #37). This argument lacks merit. As an initial matter, Batey was not required to

order transcripts of each and every deposition taken, and there may have been valid reasons, such as cost considerations, for choosing not to do so.

Turning to the factors discussed above, Jarbo also fails to show any basis for applying equitable tolling.  She does not dispute that she had actual notice of the ninety-day requirement. Jarbo was not diligent in obtaining the transcripts without which she claims she could not secure counsel.  On June 29, 2015, less than a week after Jarbo filed her second request for an extension of time to secure counsel in *Jarbo I* (in which she explained her need for the transcripts and professed an ability to timely acquire them, *see supra* at 7), USSBS' counsel e-mailed her stating, "Per your call today, I am forwarding you the deposition transcript for your deposition . . . Depositions were also taken of [] Hargrove and [] White on February 26, 2015.  I do not have copies of those transcripts.  If you wish to order them, the Court reporter was Lisa Grambo of Carroll Court Reporting, 586-468-2411 . . ."  (Doc. #28-1).  If Jarbo felt the transcripts were important to her ability to secure new counsel, she had ample time to obtain them prior to *Jarbo I's* dismissal on August 25, 2015.  USSBS has suffered arguable prejudice by Jarbo's lack of diligence; discovery in *Jarbo I* had closed while Jarbo was represented by counsel, and USSBS was preparing to file a dispositive motion.  Instead, it had to respond to this new lawsuit, participate in more discovery, and delay its opportunity to have this case against it brought to a conclusion.[8]  Finally, Jarbo was represented by counsel in *Jarbo I*, and she advised the Court that she had spoken with at least two other attorneys about potentially representing her *before* that action was dismissed.  (*Jarbo I*, Doc. #33).  Thus, any ignorance by Jarbo of the strict application of the 90-day statute of limitations is not a compelling reason to apply equitable tolling.

---

[8] Of course, to some extent this point cuts both ways, as the situation resulted in Jarbo's instant Title VII claims being filed outside the limitations period.  At any rate, even assuming USSBS suffered no prejudice, the Court's conclusion that equitable tolling is not appropriate would be the same.

For all of these reasons, Jarbo's Title VII claims asserted in the instant action are time barred. USSBS' motion for summary judgment as to Jarbo's Title VII claim should be granted.[9]

### ii.    Summary Judgment is Appropriate as to Jarbo's ELCRA National Origin Discrimination Claim against USSBS

In Count III of her complaint, Jarbo alleges "national origin" discrimination under Michigan's ELCRA, M.C.L. § 37.2101 *et seq.* The ELCRA prohibits discrimination in employment on the basis of, *inter alia*, religion, age, national origin, and sex. *See* M.C.L. § 37.2102. "Cases brought pursuant to the ELCRA are analyzed under the same evidentiary framework used in Title VII cases." *Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004). USSBS asserts two arguments in support of its motion for summary judgment as to this claim. First, it argues that Jarbo "cannot overcome the inference against a finding of discrimination under the 'same actor inference.'" Second, it argues that Jarbo failed to raise a material question of fact that it terminated her for "legitimate non-discriminatory business reasons."

USSBS argues that, "[u]nder the same actor inference, a fact finder must infer that there is no discrimination where a hiring and firing decision is made by the same individuals." (Doc. #24 at 18). The "same actor inference" "allows one to infer a lack of discrimination from the fact that the same individual both hired and fired the employee." *Buhrmaster v. Overnite Transp. Co.*, 61 F.3d 461, 463 (6th Cir. 1995). The reasoning behind the doctrine is simple: it is reasonable to infer that "[c]laims that employer animus exists in termination but not in hiring seem irrational. . . . It hardly makes sense to hire workers from a group one dislikes (thereby incurring the psychological costs of associating with them), only to fire them once they are on the job." *Id.* (quoting *Proud v. Stone*, 945 F.2d 797 (4th Cir. 1991)). Therefore, "'in cases where

---

[9] Because Jarbo's Title VII claim is time barred, the Court declines to address the claim's merits.

the hirer and firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer.'"  *Id.* (quoting *Proud*, 945 F.2d at 797).  *See also*, *Smith v. Food Bank of E. Michigan*, No. 14-13795, 2017 WL 1434309, at *5 (E.D. Mich. Apr. 24, 2017).

Here, USSBS presents a compelling case for applying the same actor inference.  It is undisputed that Jarbo was hired after being interviewed only by Hargrove and Cramer.  USSBS provided the Court with undisputed evidence that Jarbo's short tenure of just under two months with USSBS was marked by performance issues, including the August 21st Incident described above.  It is also undisputed that Hargrove wrote the "last straw" e-mail to her boss requesting Jarbo's termination immediately after learning of the August 21st Incident.  These facts support a strong inference that discrimination was not a determining factor in Jarbo's termination.

Moreover, Jarbo failed to raise a material question of fact that she was discriminated against based on her national origin under the applicable *McDonnell Douglass* burden-shifting framework.  Under this framework, a plaintiff who relies on circumstantial evidence to prove her case of discrimination must first

> establish a *prima facie* case of discrimination by showing:  (1) he is a member of a protected class; (2) he was qualified for his job and performed it satisfactorily; (3) despite his qualifications and performance, he suffered an adverse employment action; and (4) he was replaced by a person outside the protected class *or* was treated less favorably than a similarly situated individual outside his class.

*Aquino v. Honda of America*, 158 F. App'x 667, 674-75 (6th Cir. 2005) (citing *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572-73 (6th Cir. 2000); *McDonnell Douglas Corp.*, 411 U.S. at 802-03)).  If the employee establishes her prima facie case, "the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions; finally, the employee has the

burden of rebutting the employer's proffered reasons by showing them to be pretextual." *Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 427 (6th Cir. 2014). *See also Aquino*, 158 F. App'x at 674-75 (citing *Johnson*, 215 F.3d at 573); *McDonnell Douglas Corp.*, 411 U.S. at 802. To meet this final burden, the plaintiff "must introduce sufficient evidence to create a genuine issue of material fact that the proffered reason was merely a pretext to hide unlawful discriminatory motives." *Aquino*, 158 F. App'x at 674-75. The plaintiff does this "by showing that (1) the stated reasons had no basis in fact, (2) the stated reasons were not the actual reasons, or (3) the stated reasons were insufficient to explain the defendant's actions." *Id.* at 675. "Accordingly, in the summary judgment context, 'a plaintiff must produce enough evidence that a jury could reasonably reject the employer's explanation for its decisions.'" *Macdonald-Bass v. JE Johnson Contracting, Inc.*, No. 09-11445-BC, 2010 WL 2990100, at *7 (E.D. Mich. July 28, 2010) (quoting *Kocsis v. Multi–Care Mgmt., Inc.*, 97 F.3d 876, 883 (6th Cir. 1996)).

Here, even assuming that Jarbo met her initial burden, USSBS has offered a legitimate non-discriminatory reason for her termination. As discussed above, USSBS presented evidence from her managers and a colleague that Jarbo did not adequately perform the leasing agent job duties. Her managers noted problems with her retention of procedures on which she had been trained (which was perhaps exacerbated by her "speaking over" her managers when they explained procedures to her). Hargrove noted that she was not only talking on her cell phone during office hours, despite having been told she could not do that, but that she would regularly yell and swear during those phone conversations. Jarbo failed to prepare reports she had been asked to prepare. She prematurely provided apartment keys to an applicant who was not due to move in for a few weeks, and then had that person return the keys to another (non-employee) resident. And, perhaps most significantly, Hargrove noted that Jarbo was not helpful to potential

residents and instead tried to pass off these potential new customers to other USSBS employees. This particular problem was the root of the August 21st Incident, and USSBS presented evidence that immediately after that Incident Hargrove wrote her boss asking that Jarbo be terminated.

Jarbo has simply failed to present any evidence showing that the above reasons were "pretext." While she alleges that she did not receive training to perform the duties of a leasing agent, the evidence is to the contrary. First, USSBS attached a voluminous exhibit which documents training given to Jarbo on the duties of a leasing agent and fair housing laws. (Doc. #24-6). Second, Jarbo's manager testified, consistent with the documentary evidence, that Jarbo "received more training than [she'd] ever given anyone," and had been trained on multiple occasions. (Doc. #24-2 at 5-6). Finally, the one witness Jarbo offers to support her allegation that she was not properly trained, Clifton Stewart, testified that he never actually observed "what training [Jarbo] was given . . ." (Docs. #27 at 17, #28-2). Additionally, while the sexual assault alleged by Jarbo would certainly be a horrific and traumatizing experience, Jarbo failed to raise a material question of fact as to any potential constructive discharge claim (which she did not argue in her response brief) because USSBS presented undisputed evidence that it made the decision to terminate Jarbo prior to the alleged assault, and Jarbo admitted that she did not advise USSBS of the assault prior to her termination.

For all of these reasons, USSBS is entitled to summary judgment on Jarbo's ELCRA claim.

## III. CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that USSBS' Motion for Summary Judgment **(Doc. #24)** be **GRANTED** and that Jarbo's claims against USSBS be **DISMISSED WITH PREJUDICE.**

17

**IT IS FURTHER RECOMMENDED** that the Court decline to exercise supplemental jurisdiction over Jarbo's ELCRA claim against defendant Corey Jacoby, and **DISMISS THAT CLAIM WITHOUT PREJUDICE** as that state law claim would otherwise be the sole remaining claim in this case, and Jarbo has yet to serve Jacoby with process.  *See Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996) ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims . . .").


Dated: July 5, 2017                          s/David R. Grand
Ann Arbor, Michigan                     DAVID R. GRAND
                                                     United States Magistrate Judge


## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1).  Failure to timely file objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).  Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have.  *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).  Copies of any objections must be served upon the Magistrate Judge.  *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 5, 2017.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager